**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEANDRE SLATE,<br>on behalf of Plaintiff and the class members<br>described below, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | |
| MAKES CENTS, INC.,<br>doing business as MaxLend;<br>UETSA TSAKITS, INC.;<br>DAVID JOHNSON;<br>KIRK MICHAEL CHEWNING;<br>CANE BAY PARTNERS VI, LLLP;<br>DIMENSION CREDIT (CAYMAN), L.P.;<br>STRATEGIC LINK CONSULTING, LP;<br>ESOTERIC VENTURES, LLC;<br>INFOTEL INTERNATIONAL LTD.;<br>M. MARK HIGH, LTD.;<br>KIM ANDERSON;<br>JAY CLARK;<br>and DOES 1-20, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 22-cv-4165<br><br><br><br>DEMAND FOR TRIAL BY JURY |
| Defendants. | ) | |

## COMPLAINT – CLASS ACTION

1.      Plaintiff DeAndre Slate brings this action to secure redress from predatory and unlawful loans (such as <u>Exhibits A-H</u>) made by Defendants (a) Makes Cents, Inc., doing business as MaxLend ("MaxLend"); (b) Uetsa Tsakits, Inc. ("UTI"); (c) David Johnson; (d) Kirk Michael Chewning; (e) Cane Bay Partners VI, LLLP; (f) Dimension Credit (Cayman), L.P.; (g) Strategic Link Consulting, LP; (h) Esoteric Ventures, LLC; (i) InfoTel International Ltd.; (j) M. Mark High, Ltd.; (k) Kim Anderson; (l) Jay Clark and (m) Does 1-20.

2.      Plaintiff seeks damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count I), damages pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count II – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages

under RICO (Counts III- V).

## JURISDICTION AND VENUE

3.        This Court has subject matter jurisdiction under 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1331 (general federal question), and 28 U.S.C. § 1367 (supplemental jurisdiction). Depending on the number of class members and the amount of loans made to them, the Court may also have jurisdiction under 28 U.S.C. § 1332(d).

4.        This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Illinois residents.

5.        Venue is proper because the loans were made to a resident of New Lenox, Illinois.

## PARTIES

### Plaintiff

6.        Plaintiff DeAndre Slate is a resident of New Lenox, Illinois.

### Defendants

7.        Defendant Makes Cents, Inc., claims on loan documents (Exhibits A-H) to be the party doing business through the website www.MaxLend.com. It purports to be a corporation organized as "an economic development arm and instrumentality of, and wholly-owned and controlled by the Mandan, Hidatsa, and Ankara Nation, a federally-recognized sovereign American Indian Tribe" located in North Dakota. It claims to operate from the address 217 3rd Avenue NE, Parshall, ND 58770. It also uses P. O. Box 639, Parshall, ND 58770.

8.        Defendant UTI claims on the website www.MaxLend.com to be the party doing business through the website. (Exhibit I). It purports to be a corporation owned and operated by the Mandan, Hidatsa, and Ankara Nation. It uses P. O. Box 760, Parshall, ND 58770.

9.        In fact, the lending business conducted through www.MaxLend.com is beneficially owned and conducted by Defendants David Johnson ("Johnson") and Kirk Michael Chewning ("Chewning") through a web of interconnected companies, culminating with Defendant Cane Bay Partners VI, LLLP.

2

10. Defendant David Johnson is an individual who resides in the U.S. Virgin Islands.

11. Defendant Kirk Michael Chewning is an individual who may be found at 574 Vinings Springs Dr. SE 12, Mableton, GA 30126-5995, or PO Box 24313, Christiansted, VI 00824-0313.

12. Defendant Cane Bay Partners VI, LLLP, is a limited liability limited partnership organized under the law of the U.S. Virgin Islands. Its address is 17 Church Street, Ste. 305, St. Croix, U.S. Virgin Islands 00820, or 2205 Church Street, Suite 305, Christiansted, U.S. Virgin Islands 00820. Its registered agent and office is Alexander Hamilton Trust Co., LLC, 53a Company Street, Christiansted, U.S. Virgin Islands 00820. Its sole business is the management and operation of online high-interest lenders.

13. Defendant Dimension Credit (Cayman), L.P., is a limited partnership entity based in the Cayman Islands. It may be served c/o Vector Capital Corporation, att'n Roy Kelvin, One Market Street, Steuart Tower, 23d floor, San Francisco, CA 94105. On information and belief, it is owned and controlled, directly or indirectly, by Kirk Chewning.

14. Defendant Strategic Link Consulting, LP, is a limited partnership based in the state of Texas. It is an affiliate of Cane Bay Partners VI, LLLP and controlled by Kirk Chewning. Its registered agent and office is National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201.

15. Defendant Esoteric Ventures, LLC, is a limited liability company organized under the law of the state of Utah. It has registered MaxLend as a dba with the state of Utah. It also does business as Max Touch Services. It is an affiliate of Cane Bay Partners VI, LLLP and under the control of Kirk Chewning. It may be served at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144, att'n Kim Anderson, chief executive officer. Its registered agent and office is National Registered Agents, Inc., 1108 E. South Union Avenue, Midvale, UT 84047.

16. Defendant InfoTel International Ltd., is a company based in Belize. It does business as Voyse International. It is an affiliate of Cane Bay Partners VI, LLLP under the control of

Kirk Chewning. It may be served at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144, att'n Kim Anderson, chief executive officer.

17.     Defendant M. Mark High, Ltd., is a company based in Belize. It is an affiliate of Cane Bay Partners VI, LLLP under the control of Kirk Chewning. It may be served att'n Dean Molina, 5570 Princess Margaret Drive, Belize City, Belize. Its registered agent and office is Business Basics VI, LLC, Royal Palms Professional Bldg., 9053 Estate Thomas, Suite 101, Charlotte Amalie, U.S. Virgin Islands.

18.     Defendant Jay Clark is an individual residing in Georgia. He serves as chief of staff of Cane Bay Partners VI, LLLP and is general manager and chief financial officer of Defendant Strategic Link. Defendant Clark directed the acts of Cane Bay Partners VI, LLLP complained of herein.

19.     Defendant Kim Anderson is an individual residing in Georgia. Anderson may be found at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144. Anderson is chief executive officer for several of the entities listed above. Anderson directed the acts of those entities complained of herein.

20.     At no time did any of the Defendants have any type of lending license from the State of Illinois.

21.     At no time did any of the Defendants operate under a bank or credit union charter.

## FACTS

### History of MaxLend

22.     The domain maxlend.com was first registered in 2005, but the website contained no actual content until mid-2013.

23.     Domain name registration records from 2010 reveal that the registrant's address was in the U.S. Virgin Islands. (Exhibit J)

24.     MaxLend's website archived on September 21, 2013 makes no reference to any tribal ownership, and instead says "P.O. Box 1793, Belize City, Belize C.A." (Exhibit K)

4

25.     In early 2014, MaxLend "moved" from supposedly being an offshore lender in Central America to being a purported tribal lender in rural North Dakota.

26.     In fact, the lending business was not operated from either Belize or North Dakota.

**Operation of Lending Business**

27.     Based on its purported tribal ownership, MaxLend claims it is a "tribal lending entity" and therefore is entitled to invoke tribal sovereign immunity.

28.     In fact, the Tribe has no significant involvement in the operation of the lending business.

29.     Furthermore, the principal economic benefit of the activities of MaxLend is received by non-Native American persons.

30.     MaxLend does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

31.     Defendants Cane Bay Partners VI, LLLP, Johnson, and Chewning actually run the lending business conducted via www.MaxLend.com, directly or through other entities they own. They secure funding, design websites, market the business, underwrite and approve loans, and performing all other necessary functions.

32.     Defendants Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd., are held out by Chewning as providing a comprehensive package of services for the lending enterprise described herein, including website design, marketing, underwriting, call center coverage for the contact numbers and email addresses on the websites and loan documents, training, loan approval, and access to credit used to fund the loans. On information and belief, Dimension Credit (Cayman), L.P., provides funding to make the loans described herein.

33.     The Tribe contracts with Cane Bay to provide management consulting, service provider analysis, and risk management services to MaxLend. Cane Bay in turn has Defendants Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel

International Ltd., and M. Mark High, Ltd., provide the necessary services to make, service and collect the loans.

34.     The Chief Portfolio Officer of MaxLend, Darin Thomason, is a non-member of the Tribe who lives in Texas.

**FACTS RELATING TO LOANS TO PLAINTIFF**

35.     Plaintiff obtained a series of high-interest loans from "Maxlend" via the Internet, as follows:

        a.      August 10, 2021: amount financed of $1,000 at 635.47% (Exhibit A);

        b.      September 3, 2021: amount financed of $1,200 at 612.67% (Exhibit B);

        c.      October 6, 2021: amount financed of $1,300 at 558.40% (Exhibit C)

        d.      November 8, 2021: amount financed of $600 at 481.19% (Exhibit D);

        e.      December 6, 2021: amount financed of $1,600 at 475.40% (Exhibit E);

        f.      Feb. 10, 2022: amount financed of $1,000 at 363.78% (Exhibit F);

        g.      March 7, 2022: amount financed of $1,000 at 364.06% (Exhibit G);

        h.      April 5, 2022: amount financed of $1,500 at 415.67% (Exhibit H).

36.     All of these loans have been paid or prepaid in full, including interest.

37.     The loans were obtained for personal, family or household purposes and not for business purposes.

38.     Exhibits A-H represent standard form documents used by "MaxLend" on a regular basis.

39.     Defendants regularly make loans to individuals in Illinois at such rates.

40.     The loans are made entirely by Internet.

41.     The availability of the loans was made known by Internet advertising.

42.     Applications were submitted by Internet.

43.     Loan funds were disbursed by electronic transfer to the borrowers' accounts in Illinois.

6

44.     The loans were to be repaid by ACH debit of the borrowers' accounts in Illinois.

45.     The borrowers did not set foot on the Tribe's reservation in connection with the loans.

46.     At the time the loans were made, Defendants sought out Illinois residents for such loans.

47.     The "MaxLend" website lists states in which Defendants will not make loans. Illinois is currently one of these states. (Exhibit I, p. 3) It was not at the time of the loans.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

48.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

49.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

50.     In addition, it is unlawful for anyone who does not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

51.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other

7

provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

52.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

53.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

54.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

55.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of  Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of  Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/ MoneyMutualCDOrder12CC408.pdf); *In the Matter of  Hammock Credit Services*, No. 12 CC 581

8

(https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf);

*In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133 (https://www.idfpr.com/dfi/
CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20De
sist%20Order%20Bob%208%2016%202017.pdf)

## RENT-A-TRIBE SCHEMES

56.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

57.      In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

58.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

59.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

60.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

61.     To determine if a particular entity is entitled to sovereign immunity, the  majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to

have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

62.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

63.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

64.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

65.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.,* No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote,* 961 F.3d 105 (2d Cir. 2020).

66.     The excessive interest charges imposed by Defendants were intentional.

## COUNT I – ILLINOIS INTEREST ACT

67.     Plaintiff incorporates paragraphs 1-66.

68.     This claim is against all Defendants.

10

69. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

70. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

71. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

72. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 9% interest (c) which is outstanding or was paid in full on or after a date two years prior to the filing of this action.

73. Plaintiff may alter the class definition to conform to developments in the case and discovery.

74. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

75. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

77. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

78. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

       i.       Damages as provided in 815 ILCS 205/6.

       ii.      Attorney's fees, litigation expenses and costs of suit; and

       iii.     Such other and further relief as the Court deems proper.

## COUNT II – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

79.     Plaintiff incorporates paragraphs 1-66.

80.     This claim is against all Defendants.

81.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

82.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

83.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

84.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 36% interest (c) or or after March 23, 2021.

85.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

86.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

87.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and

attempting to collect illegal loans.

88.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

89.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

90.     A class action is superior for the fair and efficient adjudication of this matter, in that:

   a.     Individual actions are not economically feasible.

   b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i.     Compensatory damages;

   ii.    Punitive damages;

   iii.   Attorney's fees, litigation expenses and costs of suit; and

   iv.    Such other and further relief as the Court deems proper.

## COUNT III – RICO

91.     Plaintiff incorporates paragraphs 1-66.

92.     This claim is against Johnson, Chewning, Cane Bay Partners VI, LLLP, Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd., Kim Anderson, and Jay Clark, each of which is a RICO "person."

93.     All loans made in the name of "MaxLend" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

94.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

95.     MaxLend – whether operated by Makes Cents, UTI or both – is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois

residents via the Internet.

96.     The Defendants named herein are associated with this enterprise, as set forth above, in connection with the making and collection of loans to Illinois residents.

97.     Defendants conducted or participated in the conduct of the affairs of "MaxLend" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

98.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

99.     Plaintiff brings this claim on behalf of a class.

100.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

101.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

102.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

        a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

        b.     Whether "MaxLend" is an "enterprise."

        c.     Whether Defendants are associated with "MaxLend."

        d.     Whether Defendants conducted or participated in the affairs of "MaxLend" through a pattern of making and collecting unlawful loans.

103.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

104.    Plaintiff's claim is typical of the claims of the class members. All are based on the

same factual and legal theories.

105.　A class action is superior for the fair and efficient adjudication of this matter, in that:

　　a.　Individual actions are not economically feasible.

　　b.　Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

　　i.　Treble damages;

　　ii.　Attorney's fees, litigation expenses and costs of suit; and

　　iii.　Such other or further relief as the Court deems proper.

## COUNT IV – RICO

106.　Plaintiff incorporates paragraphs 1-66.

107.　This claim is against Johnson and Chewning, who are the RICO "persons."

108.　All loans made in the name of "MaxLend" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

109.　The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

110.　MaxLend and Cane Bay Partners VI, LLLP, constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

111.　The association in fact enterprise affects interstate commerce, in that it has physical locations outside of Illinois and makes loans to Illinois residents via the Internet.

112.　Defendants Johnson and Chewning are associated with the enterprise, in that they direct and control its lending activities.

113.　Defendant Johnson and Chewning conducted or participated in the conduct of the affairs of the association in fact enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

114. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

115. Plaintiff brings this claim on behalf of a class.

116. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 18% interest (c) which loan was made on or after a date four years prior to the filing of this action.

117. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

118. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether "MaxLend" and Cane Bay Partners VI, LLLP, constitute an association in fact "enterprise."

    c. Whether Defendants are associated with the enterprise.

    d. Whether Defendants conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

119. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

120. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

121. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

against Defendants for:

     i.     Treble damages;

     ii.     Attorney's fees, litigation expenses and costs of suit; and

     iii.     Such other or further relief as the Court deems proper.

## COUNT V – RICO

122.    Plaintiff incorporates paragraphs 1-66.

123.    This claim is against Johnson and Chewning, who are the RICO "persons."

124.    All loans made in the name of "MaxLend" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

125.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

126.    Cane Bay Partners VI, LLLP, is an enterprise, in that it is duly organized limited partnership entity.

127.    The enterprise affects interstate commerce, in that it has physical locations outside of Illinois and directs the making of loans to Illinois residents via the Internet.

128.    Defendants Johnson and Chewning are associated with the enterprise, in that they are its managers and direct and control its lending activities.

129.    Defendants Johnson and Chewning conducted or participated in the conduct of the affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

130.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

131.    Plaintiff brings this claim on behalf of a class.

132.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "MaxLend" at more than 18% interest (c) which loan was made on or after a

date four years prior to the filing of this action.

133.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

134.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

        a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

        b.    Whether  Cane Bay Partners VI, LLLP, is an "enterprise."

        c.    Whether Defendants are associated with the enterprise.

        d.    Whether Defendants conducted or participated in the affairs of the enterprise  through a pattern of making and collecting unlawful loans.

135.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

136.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

137.    A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.    Individual actions are not economically feasible.

        b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.    Treble damages;

        ii.    Attorney's fees, litigation expenses and costs of suit; and

        iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
Dulijaza (Julie) Clark (ARDC 6273353)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

_/s/ Daniel A. Edelman_
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very  relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman