## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DEANDRE SLATE,
on behalf of Plaintiff and the class members
described below,

                Plaintiff,

    vs.

MAKES CENTS, INC.,
doing business as MaxLend;
UETSA TSAKITS, INC.;
DAVID JOHNSON;
KIRK MICHAEL CHEWNING;
CANE BAY PARTNERS VI, LLLP;
DIMENSION CREDIT (CAYMAN), L.P.;
STRATEGIC LINK CONSULTING, LP;
ESOTERIC VENTURES, LLC;
INFOTEL INTERNATIONAL LTD.;
M. MARK HIGH, LTD.;
KIM ANDERSON;
JAY CLARK;
and DOES 1-20,

                Defendants.

Case No. 1:22-cv-4165

Honorable Joan H. Lefkow

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ......................................................................................................1

II.    FACTUAL BACKGROUND .....................................................................................2

III.   LEGAL STANDARD ...............................................................................................3

IV.   THE CLAIMS AGAINST THE TRIBAL DEFENDANTS MUST BE DISMISSED ................5

      A.    Sovereign Immunity Protects Tribes and Tribal Corporations Acting As Arms Of Tribes From Suit Absent Express Congressional Authorization Or Clear Waiver ..........5

      B.    The Materials Properly Before the Court Confirm Makes Cents and Uetsa Tsakits Are Entitled to Sovereign Immunity....................................................6

V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE IIA AGAINST THE NON-TRIBAL DEFENDANTS ...........................................................................................10

VI.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE NON-TRIBAL DEFENDANTS UNDER THE ICFA BASED ON AN ALLEGED VIOLATION OF THE PLPA ..................................................................................................11

VII.  PLAINTIFF FAILS TO STATE A VIABLE RICO CLAIM .......................................12

VIII. CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. Magyar Nemzeti Bank*,
  692 F.3d 661 (7th Cir. 2012) ...................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................5, 9, 14

*Boyle v. United States*,
  556 U.S. 938 (2009)...............................................................................................13, 14

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*,
  629 F.3d 1173 (10th Cir. 2010) ...........................................................................9

*C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
  532 U.S. 411 (2001)..........................................................................................6, 8

*Cherokee Nation v. Babbitt*,
  117 F.3d 1489 (D.C. Cir. 1997)..........................................................................7

*CNA v. United States*,
  535 F.3d 132 (3d Cir. 2008)................................................................................4

*Collins v. United States*,
  564 F.3d 833 (7th Cir. 2009) .............................................................................4

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) .............................................................................13

*Dahlgren v. First Nat'l Bank of Holdrege*,
  533 F.3d 681 (8th Cir. 2008) ....................................................................14, 15

*Dotson v. Tunica-Biloxi Gaming Comm'n*,
  835 F. App'x 710 (5th Cir. 2020) .......................................................................4

*Edwards v. U.S. Dep't of Justice*,
  43 F.3d 312 (7th Cir. 1994) ................................................................................3

*Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*,
  824 F. App'x 680 (11th Cir. 2020) .....................................................................4

*FDIC v. Meyer*,
  510 U.S. 471 (1994)..............................................................................................4

*Geinosky v. City of Chicago*,
  675 F.3d 743 (7th Cir. 2012) ..............................................................................5

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998) ........................................................................13, 14

*Hagen v. Sisseton-Wahpeton Cmty. College*,
    205 F.3d 1040 (8th Cir. 2000) ...............................................................................4

*Ill. Health Facilities Auth., ex rel. Scachitti v. Morgan Stanley Dean Witter & Co.*,
    381 Ill. App. 3d 823, 887 N.E.2d 601 (1st Dist. 2008)..........................................11

*Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*,
    538 U.S. 701 (2003).................................................................................................6

*Jackson v. Resolution GGF Oy*,
    136 F.3d 1130 (7th Cir. 1998) ..............................................................................10

*Jubelirer v. MasterCard Int'l, Inc.*,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) ................................................................12

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,
    523 U.S. 751 (1998)...........................................................................................5, 6

*Kuznitsky v. United States*,
    17 F.3d 1029 (7th Cir. 1994) .................................................................................4

*LaBonte v. United States*,
    233 F.3d 1049 (7th Cir. 2000) ...............................................................................3

*Lewis v. Clarke*,
    137 S. Ct. 1285 (2017)............................................................................................6

*Manago v. Cane Bay Partners VI, LLLP*,
    No. 20-CV-0945-LKG, 2022 WL 4017299 (D. Md. Sept. 2, 2022) ....................14

*McCarthy v. Option One Mortg. Corp.*,
    2003 U.S. Dist. LEXIS 15690 (N.D. Ill. Sept. 9, 2003), *aff'd on other grounds*, 362
    F.3d 1008 (7th Cir. 2004) ....................................................................................10

*McNeal v. J.P. Morgan Chase Bank, N.A.*,
    No. 16CV3115, 2016 WL 6804585 (N.D. Ill. Nov. 17, 2016)................................11

*Mestek v. Lac Courte Oreilles Cmty. Health Ctr.*,
    No. 21-cv-541-wmc, 2022 WL 1568881 (W.D. Wis. May 18, 2022)......................9

*Meyers v. Oneida Tribe of Indians of Wisconsin*,
    836 F.3d 818 (7th Cir. 2016) .............................................................................4, 5

*Michigan v. Bay Mills Indian Community*,
    572 U.S. 782 (2014)........................................................................................5, 6, 8

*Miner Elec., Inc. v. Muscogee (Creek) Nation*,
    505 F.3d 1007 (10th Cir. 2007) .............................................................................4

*Muskegan Hotels, LLC v. Patel*,
  986 F.3d 692 (7th Cir. 2021) ...................................................................12, 13, 15

*N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*,
  163 F.3d 449 (7th Cir. 1998) ...................................................................5, 8, 9, 10

*Oneida Indian Nation v. Phillips*,
  981 F.3d 157 (2d Cir. 2020) .................................................................................4

*Ortloff v. United States*,
  335 F.3d 652 (7th Cir. 2003) ...............................................................................3

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) .............................................................................11

*Palay v. United States*,
  349 F.3d 418 (7th Cir. 2003) ...............................................................................5

*Pennsylvania ex rel. Shapiro v. Think Fin., Inc.*,
  No. 14-cv-7139, 2018 WL 637656 (E.D. Pa. Jan. 31, 2018)..............................14

*Pistor v. Garcia*,
  791 F.3d 1104 (9th Cir. 2015) ..............................................................................4

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).............................................................................................14

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978).............................................................................................4, 5

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016) ...........................................................................7, 8

*Slaney v. Int'l Amateur Athletic Fed'n*,
  244 F.3d 580 (7th Cir. 2001) ..............................................................................13

*Smoke Shop, LLC v. United States*,
  761 F.3d 779 (7th Cir. 2014) ................................................................................4

*Spurr v. Pope*,
  936 F.3d 478 (6th Cir. 2019) ................................................................................4

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ..............................................................................15

*United States v. Cnty. of Cook, Ill.*,
  167 F.3d 381 (7th Cir. 1999) ................................................................................4

*United States v. Grote*,
  961 F.3d 105 (2d Cir. 2020).................................................................................15

*United States v. Mitchell*,
463 U.S. 206 (1983) .................................................................................................4

*United States v. Neff*,
787 F. App'x 81 (3d Cir. 2019) ...........................................................................15

*United States v. Sherwood*,
312 U.S. 584 (1941) .................................................................................................4

*United States v. U.S. Fidelity & Guar. Co.*,
309 U.S. 506 (1940) .................................................................................................4

*Wells Fargo Bank, N.A. v. Lake of the Torches Econ. Dev. Corp.*,
658 F.3d 684 (7th Cir. 2011) .................................................................................6

*White v. Univ. of Cal.*,
765 F.3d 1010 (9th Cir. 2014) ...............................................................................9

*Williams v. Big Picture Loans, LLC*,
929 F.3d 170 (4th Cir. 2019) .....................................................................4, 6, 8, 9

*Wright v. Associated Ins. Companies Inc.*,
29 F.3d 1244 (7th Cir. 1994) .................................................................................2

*Zekman v. Direct Am. Marketers, Inc.*,
182 Ill. 2d 359, 695 N.E.2d 853 (1998) ..............................................................11

**Statutes**

18 U.S.C. § 1962 ..........................................................................................................12

815 Ill. Comp. Stat. 123/15-10-5 ................................................................................11

815 Ill. Comp. Stat. 205/6 .....................................................................................10, 11

**Regulations**

84 Fed. Reg. 1200 ..........................................................................................................7

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants[1] hereby move to dismiss Plaintiff's Complaint.[2]

## I. INTRODUCTION

Between August 10, 2021 and April 5, 2022, Plaintiff took out eight loans from Makes Cents and Uetsa Tsakits, d/b/a MaxLend. In each of his loan agreements, Makes Cents and Uetsa Tsakits represented (and Plaintiff expressly acknowledged and agreed) that the Tribal Defendants are economic development arms and instrumentalities of the sovereign, federally-recognized American Indian tribe, the Mandan, Hidasta, and Arikara Nation (the "Nation" or "Tribe"), that engage in consumer lending pursuant to Tribal law. Plaintiff now contends that his loans violate the interest rate limits set by Illinois law. He seeks monetary damages, attorneys' fees, and other unspecified relief under the Illinois Interest Act ("IIA"), the Illinois Predatory Loan Prevention Act ("PLPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO")—not only from Makes Cents and Uetsa Tsakits, who issued and collected on his loans, but also from the Non-Tribal Defendants, who Plaintiff alleges contracted with the Tribe to provide various services to Makes Cents and Uetsa Tsakits in connection with their lending business.

The Complaint must be dismissed for multiple reasons. <u>First</u>, as Plaintiff expressly acknowledged and agreed in his loan agreements, Uetsa Tsakits and Makes Cents are entitled to sovereign immunity from suit as economic arms and instrumentalities of the Nation. Plaintiff does not and cannot plead any facts to overcome the Tribal Defendants' entitlement to immunity, so all claims

---

[1] Defendants Makes Cents, Inc. ("Makes Cents") and Uetsa Tsakits, Inc. ("Uetsa Tsakits") are collectively referred to as the "Tribal Defendants." Defendants Cane Bay Partners VI, LLLP ("Cane Bay"), Strategic Link Consulting, LP ("Strategic Link"), Esoteric Ventures, LLC ("Esoteric"), Infotel International Ltd. ("Infotel"), M. Mark High, Ltd. ("M. Mark High"), Dimension Credit (Cayman), L.P. ("Dimension"), David Johnson, Kirk Chewning, Kim Anderson, and Jay Clark are collectively referred to herein as the "Non-Tribal Defendants."

[2] Defendants are also contemporaneously filing (i) a motion to compel arbitration and (ii) a motion to dismiss or strike the class allegations. Because the Court's decisions on some issues may obviate the need to decide others, Defendants respectfully suggest that the Court decide the sovereign immunity issues raised in this motion first, followed by, as needed, the motion to compel arbitration, the Rule 12(b)(6) arguments raised herein, and then the motion to dismiss or strike the class allegations.

against them must be dismissed. <u>Second</u>, all of Plaintiff's claims against the Non-Tribal Defendants under Illinois law fail because Plaintiff does not and cannot allege that the Non-Tribal Defendants contracted for or collected unlawful interest on his loans.[3] <u>Finally</u>, Plaintiff's RICO claims fail because RICO liability cannot be predicated on an ordinary contractual agreement for services, and Plaintiff's allegations, at most, indicate that the Non-Tribal Defendants provided routine services to Makes Cents and Uesta Tsakits pursuant to a contract between the Tribe and Cane Bay.

## II.    FACTUAL BACKGROUND[4]

Plaintiff is a resident of Illinois who applied for and obtained loans via the Internet from Makes Cents, d/b/a MaxLend, on August 10, 2021 and September 3, 2021, and from Uetsa Tsakits, d/b/a MaxLend, on October 6, 2021, November 8, 2021, December 6, 2021, February 10, 2022, March 7, 2022, and April 5, 2022. Compl. ¶ 35; Declaration of Richard Mayer ("Mayer Decl."), ¶¶ 7-13, Exs. A-H.[5] Plaintiff concedes that Makes Cents and Uetsa Tsakits represented to him that they are entitled to sovereign immunity as economic development arms and instrumentalities of the Nation. Compl. ¶¶ 7, 8, 27. Indeed, in his loan agreements Plaintiff acknowledged and agreed that Makes Cents (or Uetsta Tsakits, as applicable) is a "tribal limited liability company organized under tribal law" that is an "economic development arm" and "instrumentality of" the Nation (which is "also known as the Three Affiliated Tribes of the Fort Berthold Reservation"), and is "wholly-owned and controlled by the [MHA] Nation, a federally-recognized sovereign American Indian tribe[.]"[6] Additional provisions of the loan agreements also state that the agreements are governed by Tribal law, and Makes Cents and Uetsa Tsakits

---

[3] Defendants assume for the purposes of this Motion only that Illinois law applies, as Plaintiff asserts. Defendants expressly reserve the right to challenge the application of Illinois law should the case proceed.

[4] Defendants accept Plaintiff's well-pleaded allegations as true solely for the purposes of this Motion.

[5] Documents are "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). However, the loan documents attached to the Complaint appear to have a printing error in that the letter "l" is missing from the words in each of the documents. Therefore, Defendants are filing the Mayer Declaration authenticating the loan agreements Plaintiff would have viewed on the Tribal Defendants' websites and that he electronically signed. Mayer Decl. ¶¶ 10, 13.

[6] Mayer Decl. Exs. A-B at 6, Exs. C-H at 4-5.

are owned and operated by the Nation and entitled to sovereign immunity from suit:

> **CAUTION:** The Tribe, as a sovereign government, and we, as an economic instrumentality of the Tribe, are not subject to suit or service of process. If you are not comfortable doing business with a sovereign entity and resolving any dispute exclusively by binding individual arbitration, as set forth below, do not execute this agreement. . . .
>
> **SOVEREIGN IMMUNITY.** You are doing business with a Tribal entity that is not subject to suit or service of process. Nor is the Tribe, nor any other Tribal entity or person, subject to suit or service of process because of sovereign immunity. The Tribe's government has authorized a limited waiver of only MaxLend's sovereign immunity solely for individual arbitration claims as provided below, and for no other reason or purpose. All other Tribal immunities and privileges are expressly preserved.[7]

Plaintiff expressly agreed, acknowledged, and consented to these and all other terms of the agreements.[8]

Plaintiff, nevertheless, now alleges that his loans were usurious under Illinois law, and brings this suit on behalf of himself and several putative classes of individuals with Illinois addresses "to whom a loan was made in the name of 'MaxLend,'" alleging that Defendants violated the IIA, the PLPA, and the ICFA by purportedly making and collecting on loans with interest rates exceeding Illinois' statutory caps. Compl. ¶¶ 48, 51, 67-90. Plaintiff also contends that the Non-Tribal Defendants violated § 1962(c) of RICO by providing services to Makes Cents and Uetsa Tsakits in connection with their lending business. *Id*. ¶¶ 32-33, 91-137.

## III.  LEGAL STANDARD

Whether a defendant is immune from suit based on sovereign immunity is a threshold issue of jurisdiction, going to a court's power to hear the case, that must be resolved at the outset. *See Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003) ("The question of sovereign immunity concerns the subject matter jurisdiction of federal courts.") (citing *LaBonte v. United States*, 233 F.3d 1049, 1051 (7th Cir. 2000)); *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 317 (7th Cir. 1994) ("Waiver of sovereign immunity is a jurisdictional prerequisite in the nature of . . . subject matter jurisdiction, in that unless sovereign immunity be waived, there may be no consideration of the subject matter.") (citation omitted);

---

[7] *Id*. Exs. A-B at 6, 10, Exs. C-H at 4-5, 8.

[8] *Id*. Exs. A-B at 3-4, 15, Exs. C-H at 3-4, 13.

*see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978) (tribal sovereign immunity barred suit because Indian Civil Rights Act of 1968 does not "subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief"); *United States v. U.S. Fidelity & Guar. Co.*, 309 U.S. 506, 514 (1940) (holding "the attempted exercise of judicial power" over a tribe "is void" unless there is "consent" or "jurisdiction . . . by declaration of the legislative body"); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("sovereign immunity is jurisdictional in nature"); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations omitted).[9]  For this reason, pleading challenges based on sovereign immunity are properly addressed under Rule 12(b)(1), as several Seventh Circuit decisions have recognized.  *E.g.*, *Kuznitsky v. United States*, 17 F.3d 1029, 1030-31, 1033 (7th Cir. 1994); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 669-70 (7th Cir. 2012).[10]

While other decisions in the Seventh Circuit have, nonetheless, held that pleading challenges based on sovereign immunity are properly considered under Rule 12(b)(6), *e.g.*, *Meyers*, 836 F.3d at 820; *Smoke Shop, LLC v. United States*, 761 F.3d 779, 782 n.1 (7th Cir. 2014), the Seventh Circuit has

---

[9] Some Seventh Circuit decisions have, nevertheless, "held that the question of sovereign immunity is not a jurisdictional one[,]" but rather "what sovereign immunity means is that relief against the United States depends on a statute; the question is not the competence of the court to render a binding judgment, but the propriety of interpreting a given statute to allow particular relief."  *See, e.g.*, *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016) (citing cases); *United States v. Cnty. of Cook, Ill.*, 167 F.3d 381, 389 (7th Cir. 1999); *Collins v. United States*, 564 F.3d 833, 838 (7th Cir. 2009).  But these decisions are contradicted by the Supreme Court's long and consistent treatment of sovereign immunity as jurisdictional (cited above).

[10] Other Circuits have also consistently held that pleading challenges based on sovereign immunity are properly addressed under Rule 12(b)(1).  *See, e.g.*, *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 170-71 (2d Cir. 2020); *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176-77 (4th Cir. 2019); *Dotson v. Tunica-Biloxi Gaming Comm'n*, 835 F. App'x 710, 712-13 (5th Cir. 2020); *Spurr v. Pope*, 936 F.3d 478, 482-83 (6th Cir. 2019); *Hagen v. Sisseton-Wahpeton Cmty. College*, 205 F.3d 1040, 1043 (8th Cir. 2000); *Pistor v. Garcia*, 791 F.3d 1104, 1110-11 (9th Cir. 2015); *Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1009 (10th Cir. 2007); *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F. App'x 680, 681 (11th Cir. 2020).

consistently recognized that "no matter whether . . . sovereign immunity" is given "the label 'jurisdictional' or not," it is a threshold issue that may be resolved on the pleadings. *E.g.*, *Meyers*, 836 F.3d at 820 (tribal sovereign immunity "bears the characteristics of immunity from trial and the attendant burdens of litigation," and thus is a "threshold ground[] for denying audience to a case on the merits") (citations omitted); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). Thus, in deciding a motion to dismiss based on sovereign immunity, the court may consider the well-pleaded facts in the Complaint, documents attached thereto or incorporated by reference, and facts subject to judicial notice. *See Palay*, 349 F.3d at 425 n.5; *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Courts must first weed out bare conclusions that "are not entitled to the assumption of truth." *Id.* at 680. Allegations that are contradicted by documents attached to the complaint or incorporated therein are also disregarded. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998). Only then should the court assess whether the well-pleaded facts, taken as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV. THE CLAIMS AGAINST THE TRIBAL DEFENDANTS MUST BE DISMISSED

### A. Sovereign Immunity Protects Tribes and Tribal Corporations Acting As Arms Of Tribes From Suit Absent Express Congressional Authorization Or Clear Waiver

"Indian tribes are 'domestic dependent nations' that exercise 'inherent sovereign authority.'" *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (citation omitted). Among the core aspects of sovereignty that tribes possess is the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Id.* (quoting *Santa Clara Pueblo*, 436 U.S. at 58). Accordingly, the Supreme Court has "time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional authorization (or a waiver)." *Id.* at 789 (quoting *Kiowa Tribe*

*of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998)). "The baseline position . . . is tribal immunity; and 'to abrogate [such] immunity, Congress must unequivocally express that purpose.'" *Id.* at 790 (citation omitted). Similarly, "to relinquish its immunity, a tribe's waiver must be clear." *C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001).

The broad reach of tribal sovereign immunity also extends to tribes' off-reservation commercial activities, as well as to tribally-created entities, *i.e.*, arms of the tribe, through which tribes engage in commerce. *See Bay Mills*, 572 U.S. at 785 ("[A]bsent . . . an abrogation (or a waiver), Indian tribes have immunity even when a suit arises from off-reservation commercial activity."); *Kiowa*, 523 U.S. at 760 ("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation."); *Lewis v. Clarke*, 137 S. Ct. 1285, 1290-91 (2017) ("an arm or instrumentality of the State generally enjoys the same immunity as the sovereign itself" and "[t]here is no reason to depart from these general rules in the context of tribal sovereign immunity"); *Big Picture Loans, LLC*, 929 F.3d at 176 ("The Supreme Court has recognized that tribal immunity may remain intact when a tribe elects to engage in commerce using tribally created entities, *i.e.*, arms of the tribe.") (citing *Inyo Cnty. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 704, 705 n.1 (2003)); *see also Wells Fargo Bank, N.A. v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 689 n.7 (7th Cir. 2011) (parties' assumption that tribal corporation "partakes of the Tribe's immunity from suit . . . is compatible with the general assumption prevailing among courts and commentators") (citation omitted).

**B.  The Materials Properly Before the Court Confirm Makes Cents and Uetsa Tsakits Are Entitled to Sovereign Immunity**

Plaintiff acknowledges, as he must, that Makes Cents and Uetsa Tsakits have unequivocally asserted their entitlement to share in the Nation's sovereign immunity from suit. Compl. ¶¶ 7 ("Makes Cents . . . purports to be a corporation organized as 'an economic development arm and instrumentality of, and wholly-owned and controlled by the [] Nation, a federally-recognized sovereign American Indian

Tribe'"), 8 ("[Uetsa Tsakits] . . . purports to be a corporation owned and operated by the [Nation]"); *see also id.* ¶ 27 ("Based on its purported tribal ownership, MaxLend claims it is a 'tribal lending entity' and therefore is entitled to invoke tribal sovereign immunity.").

Plaintiff's loan agreements confirm that the Tribal Defendants asserted (and Plaintiff agreed) that they are entitled to sovereign immunity from suit. In each of Plaintiff's eight loan agreements, the Tribal Defendants unequivocally represented that they are "tribal limited liability compan[ies] organized under tribal law" that are "economic development arm[s]" and "instrumentalit[ies] of" the Nation, and are "wholly-owned and controlled by the [MHA] Nation, a federally-recognized sovereign American Indian tribe[.]"[11] The MHA Nation (which is also known as the Three Affiliated Tribes of the Fort Berthold Reservation—North Dakota) is a federally-recognized American Indian tribe included on the list of tribes acknowledged by the United States Department of the Interior Bureau of Indian Affairs "to have the immunities and privileges available to federally recognized Indian Tribes by virtue of their government-to-government relationship with the United States." 84 Fed. Reg. 1200.[12] Other provisions of Plaintiff's loan agreements reiterate that the Tribal Defendants are owned and operated by the Nation and entitled to sovereign immunity. *E.g.*, Mayer Decl. Exs. A-B at 6 ("[t]he Tribe, as a sovereign government, and [the Tribal Defendants], as [] economic instrumentalit[ies] of the Tribe, are not subject to suit or service of process"), 10 ("You are doing business with a Tribal entity that is not subject to suit or service of process. Nor is the Tribe, nor any other Tribal entity or person, subject to suit or service of process because of sovereign immunity.").[13] Makes Cents and Uetsa Tsakits entered into the loan agreements in reliance on Plaintiff's agreement that they are arms of the Nation entitled to sovereign immunity. *See, e.g.*, *id.* Exs. A-B at 6 ("If you are not comfortable doing business with a sovereign

---

[11] Mayer Decl. Exs. A-B at 6, Exs. C-H at 4-5.

[12] *Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) ("The inclusion of a [tribe] on the *Federal Register* . . . would ordinarily suffice to establish that the group is a sovereign power entitled to immunity from suit."); *see also* Defendants Request for Judicial Notice in support of Motion to Dismiss ("RJN").

[13] *See also id.* Exs. C-H at 4-5, 8.

entity . . . do not execute this Agreement.");[14] *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("[A] party who signs a written contract is presumed to have notice of all of the contract's terms.").

The Tribal Defendants' unequivocal assertion (and Plaintiff's acknowledgment and agreement) in the loan agreements that Makes Cents and Uetsa Tsakits are entitled to sovereign immunity controls over any allegations in the Complaint to the contrary. *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 454 ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). Thus, Plaintiff does not *and cannot* plead any facts that would allow the Court to adjudicate his claims against the Tribal Defendants. For example, Plaintiff does not and cannot allege Congress has "unequivocally" authorized suit against Indian tribes or their instrumentalities under the IIA, the PLPA, the ICFA, or RICO. *See Bay Mills*, 572 U.S. at 789 (congressional abrogation of immunity must be "clear"). Nor can Plaintiff plausibly allege that the Tribe or the Tribal Defendants have "unequivocally" waived their sovereign immunity from suit. *C&L Enters.*, 532 U.S. at 418; *see also* RJN; Mayer Decl. Ex. J (Res. No. 12-059-VJB (June 14, 2012) (Articles of Incorporation of Makes Cents Inc., Article VIII ("The Corporation, being wholly owned, directly or indirectly by the Tribe, is to enjoy the Tribe's sovereign immunity."))); *id*., Ex. K (Res. No. 19-226-FWF (Sept. 12, 2019) (establishing Uetsa Tsakits "under the authority and laws of the Tribe[,]" as "an instrumentality of the Tribe [that] shares in the Tribe's sovereign immunity")).

Plaintiff also does not and cannot allege any facts to show that the Tribe's sovereign immunity does not extend to the Tribal Defendants. Other circuits have held that when assessing whether a tribal commercial entity is an arm of the tribe entitled to sovereign immunity, courts may consider several factors, including, "(1) the method of the entities' creation; (2) their purpose; (3) their structure, ownership, and management; (4) the tribe's intent to share its sovereign immunity; (5) the financial

---

[14] *See also id*., Exs. C-H at 5.

relationship between the tribe and the entities; and (6) the policies underlying tribal sovereign immunity and the entities' 'connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities[,]" none of which is required or dispositive. *Big Picture Loans*, 929 F.3d at 177 (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)); *Mestek v. Lac Courte Oreilles Cmty. Health Ctr.*, No. 21-cv-541-wmc, 2022 WL 1568881, at *4 (W.D. Wis. May 18, 2022) (quoting *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014)).  The Court need not address these factors here, as Plaintiff's loan agreements confirm the parties agreed that the Tribal Defendants are entitled to immunity from suit.  *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 455 ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").  Regardless, the materials properly before the Court confirm: (1) Makes Cents and Uetsa Tsakits were formed under tribal law, RJN; Mayer Ex. I (Res. No. 11-131-VJB (Dec. 14, 2011)); *id.*, Ex. J; (2) both were formed "to promote the self-sufficiency of the [Nation] and its members and families, and to address the socio-economic and cultural needs of the [Nation], its members, and its community[,]" *id.*; (3) both are "wholly owned, directly or indirectly, by the Tribe[,]" which has the "sole proprietary interest in, and . . . sole responsibility for the conduct of the activities of, [each] Corporation[,]" *id.*, Exs. J, K; (4) the Tribe explicitly conferred its sovereign immunity to both, *id.*; and (5) both were established to "build capital" that is "subsequently dispersed to the [Nation] and used in the [Nation's] governmental discretion" to "guarantee that the [Nation] can continue to care for itself, its members, and its community by promoting greater self-determination, political and social autonomy and cultural rejuvenation and survival[,]" *id.*[15]  Accordingly, the claims against the Tribal Defendants should be dismissed.  *Mestek*, 2022 WL 1568881, at *2-5 (dismissing suit against tribal

---

[15] Plaintiff's conclusory allegations regarding other so-called "rent-a-tribe scheme[s]" are not only offensive, but irrelevant to this analysis and inaccurate. *See* Compl. ¶¶ 56-65; *Iqbal*, 556 U.S. at 680; *Big Picture Loans*, 929 F.3d at 177 (concluding tribal lending entities were arms of the tribe entitled to sovereign immunity).

entity for lack of jurisdiction because judicially-noticed tribal records established it was "plainly an arm of the Tribe for purposes of sovereign immunity").

## V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE IIA AGAINST THE NON-TRIBAL DEFENDANTS

Plaintiff's IIA claim against the Non-Tribal Defendants must be dismissed because Plaintiff does not and cannot allege that the Non-Tribal Defendants contracted for or received unlawful interest with respect to his loans.  Section 6 of the IIA provides that:

> If any person or corporation knowingly contracts for or receives, directly or indirectly, by any device, subterfuge or other means, unlawful interest, discount or charges for or in connection with any loan of money, the [borrower] may, recover by means of an action . . . an amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus such reasonable attorney's fees and court costs as may be assessed by a court against the lender.

815 Ill. Comp. Stat. 205/6 (emphasis added).  Courts have uniformly interpreted Section 6 to permit suits _only_ against "a _lender_ who contracts with the borrower, or an assignee who holds a note signed by the borrower and thus 'receives' the unlawful charges."  _E.g._, _McCarthy v. Option One Mortg. Corp._, 2003 U.S. Dist. LEXIS 15690, at *15 (N.D. Ill. Sept. 9, 2003) (emphasis added) (granting summary judgment on Section 205/6 claim, finding no reasonable basis to extend liability to loan servicer), _aff'd on other grounds_, 362 F.3d 1008 (7th Cir. 2004); _Jackson v. Resolution GGF Oy_, 136 F.3d 1130, 1131 (7th Cir. 1998) (noting "Section 205/6 applies only to 'the lender'" and holding plaintiffs lacked standing to sue defendant who did not purchase any of plaintiffs' notes).

Dismissal as to the Non-Tribal Defendants is thus warranted.  Despite Plaintiff's conclusory allegation that all "Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members[,]" Compl. ¶ 69, Plaintiff's loan agreements confirm that only Makes Cents and Uesta Tsakits contracted with Plaintiff and collected on his loans.[16] _N. Indiana Gun & Outdoor Shows,_

---

[16] Compl. ¶¶ 35 (Plaintiff obtained loans from "MaxLend"), 44 ("The loans were to be repaid by ACH debit of the borrowers' accounts in Illinois."); Mayer Decl., Exs. A-B at 6 (identifying lender as "Makes Cents, Inc. d/b/a MaxLend[;]" defining "[t]he words 'we', 'us', and 'our' [to] mean Makes Cents, Inc. d/b/a MaxLend"), 8 ("[Y]ou authorize us, and our successors or assigns, to initiate, and our servicers or agents to process automatic debit entries for payments in accordance with this Agreement from your Bank Account[.]"), Exs. C-H at 4

163 F.3d at 454-55 (terms of agreement attached to complaint "trump[] the allegations").

Plaintiff's conclusory allegations that "[t]he lending business conducted through www.MaxLend.com is beneficially owned and conducted by" Defendants Johnson and Chewning "through a web of interconnected companies, culminating with Defendant [Cane Bay]" also cannot save his IIA claim. Compl. ¶ 9; *see also id.* ¶¶ 31, 33.[17] Even if true, these allegations do not provide a basis to assert an IIA claim against the Non-Tribal Defendants, as the IIA does not provide for aiding and abetting liability. 815 Ill. Comp. Stat. 205/6; *cf. Ill. Health Facilities Auth., ex rel. Scachitti v. Morgan Stanley Dean Witter & Co.*, 381 Ill. App. 3d 823, 826-27, 887 N.E.2d 601, 605-06 (1st Dist. 2008) (no implied cause of action for aiding and abetting under Whistleblower Reward and Protection Act).

## VI.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE NON-TRIBAL DEFENDANTS UNDER THE ICFA BASED ON AN ALLEGED VIOLATION OF THE PLPA

Plaintiff's ICFA claim is based entirely on his allegation that "Defendants" violated the ICFA by "contract[ing] for and collect[ing] loans prohibited by the [PLPA]." Compl. ¶¶ 48-49, 81-82.[18] To state a claim under the ICFA based on an alleged violation of the PLPA, a plaintiff must plausibly allege that each defendant committed a violation of the PLPA that proximately caused plaintiff to suffer actual damages. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006). Also, "there is no derivative liability under the ICFA." *McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16CV3115, 2016 WL 6804585, at *8 (N.D. Ill. Nov. 17, 2016) (dismissing claim alleging predatory loan was unfair in violation of ICFA against defendants who did not originate loan) (citing *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 370, 695 N.E.2d 853 (1998) ("The [ICFA] does not provide for a cause of action against those who

---

(identifying lender as Uetsa Tsakits), 6 (authorizing Uesta Tsakits to initiate and process ACH debits for payments).

[17] Plaintiff's attempt to substantiate his naked assertions about the Non-Tribal Defendants' purported operation of Makes Cents and Uetsa Tsakits with allegations about "tribal lending schemes" generally (*see, e.g.*, Compl. ¶¶ 56-65) is plainly insufficient, as no facts are pled to connect Defendants to any such "schemes."

[18] The PLPA does not provide a private right of action for a violation of its provisions. Instead, it states: "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the [ICFA]." 815 Ill. Comp. Stat. 123/15-10-5(b). Plaintiff does not allege a violation of the ICFA under any other theory.

knowingly receive benefits from the person committing the violation.").

Plaintiff fails to plausibly allege any violation of the PLPA, and thus the ICFA, by any of the Non-Tribal Defendants. Plaintiff fails to allege what specific services each of the Non-Tribal Defendants purportedly provided to the Tribal Defendants, much less that such services were utilized in connection with any of Plaintiff's loans. Nor does Plaintiff allege that the Non-Tribal Defendants contracted for or collected on *his* loans. Compl. ¶ 81 (referring to generic "loans"). He cannot truthfully do so, as Plaintiff's loan agreements confirm that only Makes Cents and Uetsa Tsakits contracted for and collected on his loans.[19] Plaintiff thus fails to plead that any of the Non-Tribal Defendants committed a violation of the PLPA that proximately caused him actual damages.

## VII. PLAINTIFF FAILS TO STATE A VIABLE RICO CLAIM

Plaintiff's three alternative theories of liability under RICO, Compl. ¶¶ 91-114, all fail to plausibly allege a viable § 1962(c) claim for the same basic reason: RICO "cannot be circumvented by attempting to characterize a routine contractual relationship for services as an independent enterprise." *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999). At best, Plaintiff's well-pleaded allegations indicate that the Non-Tribal Defendants provided services to Makes Cents and Uetsa Tsakits in connection with their lending business, pursuant to a contract between the Tribe and Cane Bay. Under well-established Seventh Circuit law, Plaintiff's RICO claims fail as a matter of law.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), at a minimum, Plaintiff must allege that each defendant "engaged in the (1) conduct (2) of an enterprise (3) through . . . collection of unlawful debt." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021).

---

[19] Compl. ¶¶ 35, 44; Mayer Decl., Exs. A-B at 6, 8-9, Exs. C-H at 4, 6-7.

The Seventh Circuit has repeatedly held that where, as here, a plaintiff's allegations rest on a routine commercial agreement for services, they fail to establish both the "conduct" and "enterprise" requirements of RICO. With respect to the "conduct" prong, the Seventh Circuit has "made patent[] 'simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to submit an individual to RICO liability under § 1962(c).'" *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001) (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998)). That is because RICO "does not penalize tangential involvement in an enterprise[,]" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009); instead, a defendant "must have asserted some control over the enterprise," *Slaney*, 244 F.3d at 598. Accordingly, the Seventh Circuit has consistently held that plaintiffs fail to plead a viable RICO claim where, as here, the allegations "clearly allege the existence of a business relationship between the[] defendants and the [alleged] enterprise, but do not indicate that [the] defendants 'took some part in directing [the alleged enterprise's] affairs.'" *Goren*, 156 F.3d at 728 (allegations that defendants provided promotional and distribution services to alleged pyramid scheme involving bogus health care products, but did not direct the enterprise's affairs, insufficient to plead conduct prong); *see also Muskegan Hotels*, 986 F.3d at 699-700 (law firm's provision of services that enabled racketeering enterprise insufficient to demonstrate conduct prong, without adequately pleading law firm played a part in operating or managing enterprise); *Crichton*, 576 F.3d at 399; *Slaney*, 244 F.3d at 598.

For similar reasons, allegations of a garden-variety services agreement are also insufficient to plead an association-in-fact enterprise. *Crichton*, 576 F.3d at 399-400. "[A]n association-in-fact enterprise must be meaningfully distinct from the entities that comprise it such that the entity sought to be held liable can be said to have controlled and conducted the enterprise rather than merely its own affairs." *Id.* at 399. When the plaintiff "has done no more than describe the ordinary operation of a garden-variety [services] arrangement" between the alleged participants in the association-in-fact enterprise, the allegations show only that the service provider "was merely a conduit for" its client's

allegedly improper conduct—not an association-in-fact enterprise. *Id.* at 400 (allegations of a services agreement likewise fail to plead the structural features of association-in-fact enterprise); *see also Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose").

Plaintiff also makes no attempt to plead the requisite structural features of the association-in-fact enterprise alleged in Count IV of the Complaint, which alone demands dismissal of that claim. Just last month the United States District Court for the District of Maryland dismissed similar RICO claims against Defendants Cane Bay, Johnson, and Chewning, where, like here, the complaint was "devoid of any facts about the structure or organization of the alleged [association-in-fact] enterprise." *Manago v. Cane Bay Partners VI, LLLP*, No. 20-CV-0945-LKG, 2022 WL 4017299, at *6 (D. Md. Sept. 2, 2022).

Plaintiff's only well-pleaded allegations here show that the Non-Tribal Defendants provide services to Makes Cents and Uetsa Tsakits in connection with their lending business, pursuant to a contract between the Tribe and Cane Bay. Compl. ¶¶ 32-33. Plaintiff alleges no facts that would allow the Court to infer that any of the Non-Tribal Defendants direct or control the Tribal Defendants' lending business. Plaintiff's bare assertions that Defendants Cane Bay, Johnson, and Chewning "conduct[,]" "ran[,]" and "direct and control" Makes Cents' business, Compl. ¶¶ 9, 31, 112, 128, are nothing more than "formulaic recitation[s]" of the conduct element of a RICO claim. *Iqbal*, 556 U.S. at 678.[20] Defendants Strategic Link, Esoteric, Infotel, and M. Mark High are only vaguely alleged to provide services to Makes Cents and Uesta Tsakits, pursuant to the Tribal Defendants' contract with Cane Bay, which is not sufficient to state a claim under RICO. Compl. ¶¶ 32-33; *Goren*, 156 F.3d at 728. Plaintiff alleges only that Dimension Credit "provides funding to make the loans." Compl. ¶ 32. But "a

---

[20] *See Reves v. Ernst & Young*, 507 U.S. 170, 177-78 (1993) ("[a]s a verb, 'conduct' means to lead, run, manage, or direct[,]" thus, to "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs" under § 1962(c), a defendant must have played "some part in directing the enterprise's affairs").

defendant does not incur liability . . . for merely funding an alleged unlawful enterprise." *Pennsylvania ex rel. Shapiro v. Think Fin., Inc.*, No. 14-cv-7139, 2018 WL 637656, at *9 (E.D. Pa. Jan. 31, 2018); *see also Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008) (no RICO liability for lender to alleged enterprise absent facts indicating lender took steps to "direct the operation or management" of alleged enterprise). And absent well-pled allegations that Cane Bay or the other Non-Tribal Defendants directed the alleged enterprise's affairs, Plaintiff's conclusory allegations that Defendant Clark "directed the acts of Cane Bay" and Defendant Anderson "directed the acts" of *unspecified* "entities" are also plainly insufficient. *Muskegan Hotels*, 986 F.3d at 700 ("Conclusory allegations . . . will not do.").[21] Simply put, in the absence of facts suggesting that Defendants "were acting in concert on behalf of a shadow enterprise while maintaining the outward appearance of a normal commercial relationship, there is ultimately not enough in this complaint to elevate that inference from a 'sheer possibility' to something that is 'plausible on its face.'" *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013).

## VIII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed.

---

[21] Plaintiff's conclusory allegations about other so-called "rent-a-tribe" schemes, Compl. ¶¶ 56-65, are irrelevant and cannot be used to infer that Defendants engaged in any similar such scheme. *Muskegan Hotels*, 986 F.3d at 700. Indeed, the facts at issue in the criminal cases Plaintiff cites only serve to highlight the inadequacies of Plaintiff's Complaint. Compl. ¶¶ 64-65 (citing *United States v. Neff*, 787 F. App'x 81, 85-87 (3d Cir. 2019) (defendants drafted agreements to "facially transfer" lending portfolio to tribe while non-tribal business partner "continued to provide money for the loans and employees to collect on them[,]" directed accountant to falsify tax returns, and offered tribal chief $10,000 a month to give false testimony to cover up defendants' control over lending operation); *United States v. Grote*, 961 F.3d 105, 112 (2d Cir. 2020) (under defendant's arrangement with tribe, tribe would claim to own loan portfolios in exchange for 1% of lending portfolio's revenue, while defendant provided all capital for loans, bore risk of default, issued, administered, and collected on loans, and engaged in variety of deceptive strategies to give false appearance that the tribe owned and operated the business)). Plaintiff does not and cannot truthfully allege any such facts with respect to Defendants.

DATED:  October 24, 2022

Respectfully submitted,

_____ */s/ Ashley Vinson Crawford*_____
Ashley Vinson Crawford (*pro hac vice*)
Danielle C. Ginty (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
580 California Street, Suite 1500
San Francisco, CA  94104
Tel: (415) 765-9500
Fax: (415) 765-9501
Email: avcrawford@akingump.com
Email: dginty@akingump.com

Ellen M. Carey
FORDE & O'MEARA LLP
191 North Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 399-2377
Email: ecarey@fordellp.com

*Attorneys for Defendants*
Cane Bay Partners VI, LLLP, Strategic Link
Consulting, LP, Esoteric Ventures, LLC, Infotel
International Ltd., M. Mark High, Ltd., David
Johnson, Kirk Chewning, and Jay Clark

DATED: October 24, 2022

_____ */s/ Nicole E. Ducheneaux*_____
Leonika R. Charging-Davidson (*pro hac vice*)
Nicole E. Ducheneaux (*pro hac vice*)
Todd Allin Morman (*pro hac vice*)
BIG FIRE LAW & POLICY GROUP LLP
1905 Harney Street, Suite 300
Omaha, NE 68002
(531) 466-8792
Email: lcharging@bigfirelaw.com
Email: nducheneaux@bigfirelaw.com

Joel M. L. Huotari
John James Holevas
Troy E. Haggestad
WILLIAMS MCCARTHY
120 W. State Street
P.O. Box 219
Rockford, IL 61105-0219
(815) 987-8982
Email: jhuotari@wilmac.com
Email: jholevas@wilmac.com
Email: thaggestad@wilmac.com

16

*Attorneys for Defendants*
Makes Cents, Inc. and Uetsa Tsakits, Inc.

DATED: October 24, 2022                   */s/ Matthew M. Morrissey*

Matthew M. Morrissey
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, Illinois 60606
Tel: (312) 569-1365
Email: matthew.morrissey@faegredrinker.com

Matthew J. Fedor (*pro hac vice pending*)
Frank F. Velocci (*pro hac vice pending*)
Andrew L. Van Houter (*pro hac vice pending*)
FAEGRE DRINKER BIDDLE & REATH LLP
600 Campus Dr.
Florham Park, New Jersey 07932
Tel: (973) 549-7000
Fax: (973) 360-9831
Email: matthew.fedor@faegredrinker.com
Email: frank.velocci@faegredrinker.com
Email: andrew.vanhouter@faegredrinker.com

*Attorneys for Defendant*
Dimension Credit (Cayman), L.P.

DATED: October 24, 2022                   */s/ Nicole M. Strickler*

Nicole M. Strickler
MESSER STRICKLER BURNETTE, LTD.
142 W. Station Street
Barrington, IL 60010
(312) 334-3442 (direct)
(312) 334-3473 (fax)
Email: nstrickler@messerstrickler.com

*Attorneys for Defendant*
Kim Anderson

17