IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEANDRE SLATE, on behalf of Plaintiff and the class members described below, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>MAKES CENTS, INC., doing business as MaxLend; UETSA TSAKITS, INC.; DAVID JOHNSON; KIRK MICHAEL CHEWNING; CANE BAY PARTNERS VI, LLLP; DIMENSION CREDIT (CAYMAN), L.P.; STRATEGIC LINK CONSULTING, LP; ESOTERIC VENTURES, LLC; INFOTEL INTERNATIONAL LTD.; M. MARK HIGH, LTD.; KIM ANDERSON; JAY CLARK; and DOES 1–20, <br><br>　　　　Defendants. | Case No. 22 C 4165 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

DeAndre Slate filed this putative class action on August 9, 2022, alleging that Makes Cents, Inc. and Uetsa Tsakits, Inc.,[1] as well as related entities and individuals, are in the business of extending loans at exorbitant interest rates by contracting with a Native American tribe that is beyond the reach of Illinois usury and consumer protection laws. (Dkt. 1.) He seeks damages for violation of the Illinois Interest Act, 815 ILCS 205/6 (Count I), the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS

---

[1] Slate alleges that Makes Cents and Uetsa Tsakits both conduct business through www.MaxLend.com. (Dkt. 1 ¶¶ 7–8.) For purposes of this ruling, the court refers to these two entities collectively as "MaxLend." The court refers to all defendants collectively as "defendants."

505/1 *et seq*. (Count II), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Counts III–V).[2]

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the basis that MaxLend is an arm of the Mandan, Hidatsa, and Arikara Nation ("the Tribe" or "the Nation"), a federally-recognized sovereign American Indian tribe located in North Dakota. (*See* dkts. 57, 58.) As such, defendants contend, MaxLend is immune from suit and the claims against them must be dismissed for lack of jurisdiction. In addition, they contend that Slate fails to state a claim against the "non-tribal"[3] defendants under RICO or any of the Illinois statutes. Alternatively, defendants contend that the case must be submitted to arbitration as provided in the loan agreements Slate signed. (*See* dkts. 60, 61.)

Slate seeks discovery before responding to the pending motions relating to whether defendants are actually an arm of a Native American tribe and whether the arbitration clause in his loan agreement is valid. The motion for discovery is granted in part and denied in part. The pending motion to dismiss, motion to compel arbitration, and motion to strike class allegations are denied without prejudice.

**I.      Slate's Request for Discovery Relating to Sovereign Immunity**

MaxLend assumes that sovereign immunity is jurisdictional, meaning that this court may not address the merits of Slate's claims. Indeed, some courts treat tribal sovereign immunity as jurisdictional, but *Meyers* v. *Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 823 (7th Cir.

---

[2] Slate properly rests jurisdiction on the RICO claim, 28 U.S.C. 1964, and supplemental jurisdiction over the Illinois law claims. 28 U.S.C. § 1367. Venue is proper because the loans were made to an Illinois resident.

[3] This is the term used by defendants in their briefing; the court's use of it here is not intended to imply endorsement of defendants' position that Makes Cents and Uetsa Tsakits, by contrast, are "tribal" entities.

2016), held that "the question of sovereign immunity is not a jurisdictional one." *Id.* at 822. "Sovereign immunity … is a waivable defense." *Id*. *Meyers* is controlling here. Still, sovereign immunity is a threshold issue that may be decided before proceeding to the merits. *See id.* at 822 ("[N]o matter whether we give sovereign immunity the label 'jurisdictional' or not, it is nevertheless a 'threshold ground[ ] for denying audience to a case on the merits.'") (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). As with any affirmative defense, the defendant bears the burden of proof and, unless the plaintiff pleads himself out of court, "[he] is not required to negate an affirmative defense in his complaint." *Tregenza* v. *Great American Communications Co*., 12 F.3d 717, 718 (7th Cir. 1993).[4] On the other hand, where the issue is one of immunity from suit, the interests of justice may weigh in favor of resolving it at the threshold to avoid the burden of litigation on the sovereign if immunity is established. *See Meyer*s, 836 F.3d at 822 (stating that "sovereign immunity, like qualified immunity, also bears the characteristics of 'immunity from trial and the attendant burdens of litigation'") (quoting *Abelesz* v. *Magyar Nemzeti Bank*, 692 F.3d 661, 667 (7th Cir. 2012)).

    MaxLend supports its claim of immunity with documents reflecting that the Nation's Tribal Business Council created Tsakits Uetsa "to pursue [] economic development opportunities as a wholly owned Tribal entity." (Dkt. 64-11 at 2.) The document confers the Nation's sovereign immunity on the corporation. The Council also created Makes Cents, Inc, whose articles of incorporation provide that "[t]he Corporation, being wholly owned, directly or indirectly by the Tribe, is to enjoy the Tribe's sovereign immunity." (Dkt 64-10 at 7–8.)

---

[4] Where sovereign immunity is treated as jurisdictional, courts still place the burden of proof on the party seeking immunity as an arm of the tribe. *See*, *e.g.*, *Williams* v. *Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) ("Placing the burden of proof on the defendant entity aligns with our reasoning … that sovereign immunity is 'akin to an affirmative defense' and gives proper recognition to the similarities between state sovereign immunity and tribal sovereign immunity.") (quoting *Hutto* v. *S.C. Retirement Sys*., 773 F.3d 536, 543 (4th Cir. 2014)).

3

MaxLend also points out that Slate acknowledged and accepted that he was dealing with a sovereign tribe and was giving up the consumer rights he might have under state or federal law by entering into his loan agreement. (*See, e.g.*, dkt. 1-1 at 12). MaxLend argues that these documents establish beyond dispute that MaxLend and the related entities share the Nation's sovereign immunity.

This position is inconsistent with prevailing case law, however. "[A]n entity that is formally distinct from the tribe should only be immune from suit to the extent that it is an arm of the tribe." *Williams* v. *Big Picture Loans, LLC*, 929 F.3d 170, 176–77 (4th Cir. 2019). Under a leading case, *Breakthrough Management Group, Inc.* v. *Chukchansi Gold Casino and Resort*, 629 F.3d 1173 (10th Cir. 2010), the relationship between the tribal sovereign and its commercial subdivision must be "sufficiently close to properly permit the entity to share in the tribe's immunity." *Id*. at 1183.[5] This is a mixed question of law and fact.[6] *Id*. at 1181. The *Breakthrough* court identified six non-exclusive factors to guide the factual inquiry:

> [W]e should look to a variety of factors when examining the relationship between the economic entities and the tribe, including but not limited to: (1) their method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities.

*Id*. at 1181. The documents attached to the pleading and defendants' motion to dismiss are not, alone, dispositive of this inquiry.

---

[5] The Seventh Circuit has not adopted the *Breakthrough* factors, but the Ninth and Fourth Circuits have done so. *See White* v. *Univ. of California*, 765 F.3d 1010 (9th Cir. 2014); *Williams* v. *Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019); *see also Everette* v. *Mitchem*, 146 F. Supp. 3d 720 (D. Md. 2015); *Easley* v. *Hummingbird Funds*, No. 19-00937, 2020 WL 5099955 (S.D. Ala. July 30, 2020).

[6] The legal issue is "the appropriate test to determine whether economic entities associated with a tribe may share in the tribe's immunity." *Breakthrough*, 629 F3d. at 1173. The factual issue "involv[es] the application of that test to the relationship between the Tribe and the [commercial entity]." *Id*.

Although the Seventh Circuit has not addressed the discovery issue presented here, plaintiffs point to several similar cases where courts have allowed discovery at the motion to dismiss stage, albeit based on the assumption that the outcome determined the court's jurisdiction.[7] *See*, *e.g.*, *Finn* v. *Great Plains Lending, LLC*, 689 Fed. Appx. 608, 610 (10th Cir. 2017) (reversing dismissal to allow jurisdictional discovery of the factual question regarding a tribal sovereign's entitlement to immunity) (citing *Hansen* v. *PT Bank Negara Indon. (Persero), TBK*, 601 F.3d 1059, 1063–64 (10th Cir. 2010) (indicating approval of district court's "narrowly tailored" jurisdictional discovery)); *United States* ex rel. *Cain* v. *Salish Kootenai Coll., Inc.*, 862 F.3d 939 (9th Cir. 2017) (remanding for jurisdictional discovery on *Breakthrough* factors); *Gibbs* v. *Plain Green, LLC*, 331 F.Supp.3d 518, 530 (E.D. Va. 2018) (finding that the plaintiff's "specific and substantive" allegations challenging defendants' claim of sovereign immunity justified discovery).

As the court in *Gibbs* stated, "Jurisdictional discovery can be appropriate when a plaintiff files a motion containing specific and substantive allegations regarding a court's jurisdiction, or when significant gaps in the record exist regarding the court's jurisdiction over the defendant." *Gibbs*, 331 F.Supp.3d at 529. The court pointed to allegations that plaintiffs claimed that the commercial entity rather than the tribes controlled the entity's day-to-day operations in specific ways. *See id*. at 530–31. Here, Slate counters MaxLend's corporate documents with allegations that MaxLend is beneficially owned and operated by individuals who have no connection to the Tribe, reside in states or countries other than South Dakota, and operate through a web of identified interconnected limited partnerships, culminating with defendant Cane Bay Partners VI,

---

[7] Because *Meyers* approves resolving the immunity issue at the threshold, the cases cited here are instructive of how to reach the issue in the manner consistent with the principle of protecting an immune party from litigation.

5

LLLP, which is a U.S. Virgin Islands company that actually runs the lending business. (Dkt. 1 ¶¶ 9–19). These are detailed and specific allegations supporting Slate's claim that MaxLend is not actually a tribal commercial entity (*id.* ¶¶ 35–47) but that it has "rented a tribe" in order to evade predatory lending laws (*id.* ¶¶ 48–55). In his reply brief in support of this motion, Slate also identifies the specific information he seeks to obtain through limited discovery (*see* dkt. 74 at 9–10). *See Gibbs*, 331 F.Supp.3d at 530 (permitting limited jurisdictional discovery where the plaintiff requested "specific information and documents" related to several of the *Breakthrough* factors). Slate's allegations are sufficient to demonstrate that discovery related to the *Breakthrough* issues is justified. For these reasons, the motion for discovery is granted, to be supervised in scope by the designated magistrate judge.

II.     **Slate's Request for Discovery Regarding the Arbitration Clause**

Turning to Slate's motion for discovery relating to the validity of the arbitration clause, the court is not persuaded that he has made a threshold showing that, if one assumes the validity of the loan agreements, the arbitration clause would be invalid. If, as he argues, the arbitration clause is a sham amounting to a prospective waiver of all federal and state statutory rights, Slate does not identify what factual issues other than the scope of the waivers made in the loan agreements need to be explored. The court denies the motion for discovery related to the validity of the arbitration clause. If the loan agreement itself turns out to be void, then the question of enforceability of any of its provisions would present only questions of law. Therefore, the court denies threshold discovery relating to the arbitration clause.

Because the court previously granted Slate's motion to defer briefing on defendants' other pending motions until the instant motion is resolved (*see* dkt. 87), those motions are not yet fully briefed. For reasons of judicial economy, the court denies those pending motions without prejudice to refiling following the close of limited discovery.

**CONCLUSION AND ORDER**

For the reasons stated above, plaintiff's motion to take discovery and defer response (dkt. 70) is granted in part and denied in part. Plaintiff is allowed to take discovery limited to factors relevant to the defendants' claim of sovereign immunity. Supervision of this discovery, including scope, timing, and motions, is referred to the designated magistrate judge. The motion for discovery related to the validity of the arbitration clause is denied without prejudice to renewal after resolution of the sovereign immunity defense. Defendants' motion to dismiss (dkt. 57), motion to compel arbitration (dkt. 60), and motion to strike class allegations (dkt. 62) are denied without prejudice to renewal after the designated magistrate judge has closed threshold discovery.

Date: May 17, 2023

_____
U.S. District Judge Joan H. Lefkow